IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


DANIEL S. FUCCI,
     Petitioner,

vs.                                     Case No.:  1:16cv271/WTH/EMT

FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and relevant portions of the state court record (ECF No. 15).  Petitioner filed a reply (ECF No. 17).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 15).[1]  Petitioner was charged in the Circuit Court in and for Alachua County, Florida, Case No. 2008-CF-2620, with two counts of attempted first degree murder (Counts I and II), one count of felony fleeing or attempting to elude a law enforcement officer (high speed chase) (Count III), and one count of aggravated child abuse (Count IV) (Ex. A at 56–57).  On September 14, 2009, Petitioner entered a written plea agreement, pursuant to which he agreed to plead nolo contendere to Counts I, III, and IV, and Petitioner and the State agreed that they would recommend a total sentence of 11–50 years in prison (*id.* at 62–66).  At a hearing the same day, the trial court conditionally accepted the plea (Ex. L at 91–110).  On December 3, 2009, the trial court adjudicated Petitioner guilty of Counts I, III, and IV, and sentenced him to thirty (30) years in prison on Count I, a term of five (5) years in prison on Count III, to run concurrently with the sentence on Count

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 15), unless otherwise indicated.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

I, and a term of ten (10) years in prison on Count IV, to run consecutive to the sentence on Count I, with jail credit of one year and 168 days (Ex. A at 164–71; Ex. L at 111–76).  The State announced a nolle pros as to Count II (Ex. L at 175). Petitioner filed a pro se "Notice of Appeal and Motion to Set Aside Plea" in the trial court on December 9, 2009 (Ex. A at 176).  The court forwarded the notice to the Florida First District Court of Appeal ("First DCA"), which assigned Case No. 1D09-6222 (*see* ECF No. 1-1, Ex. E).  On December 16, 2009, the First DCA issued an order directing Petitioner to pay the filing fee or submit an order of insolvency from the lower tribunal within 30 days (*id.*).  The First DCA also ordered Petitioner to file an amended notice of appeal within 10 days, which included a proper certificate of service and the date of rendition of the order he sought to appeal (*see* ECF No. 1-1, Ex. E; ECF No. 15, Ex. B).  On December 15, 2009, Petitioner filed a pro se application for criminal indigent status in the circuit court (ECF No. 15, at 177–78). The circuit court granted indigent status and notified the First DCA (*see* ECF No. 15 at 177–78; ECF No. 1-1, Ex. E).  On February 3, 2010, the First DCA dismissed the appeal for Petitioner's failure to comply with the order directing him to file an amended notice of appeal (ECF No. 15, Ex. B).  On August 19, 2010, the trial court denied Petitioner's pro se Motion to Set Aside Plea, which Petitioner had filed on

December 9, 2009, in the same document as his Notice of Appeal (Ex. F).  Petitioner

filed a notice of appeal of the trial court's order, and the First DCA assigned Case No.

1D10-5186 (Exs. F, G).  Petitioner also sought to reinstate his first appeal in First

DCA Case No. 1D09-6222, seeking to present the same arguments in both appeals

(*see* Exs. C, D, G). The First DCA denied Petitioner's request to reinstate Case No.

1D09-6222 (*see* Ex. E); but in Case No. 1D10-5186, the First DCA reversed the trial

court's order and remanded to the trial court to grant Petitioner leave to amend his

Motion to Set Aside Plea (Ex. J).  Fucci v. State, 54 So. 3d 591 (Fla. 1st DCA 2011)

(Mem).  On March 25, 2011, the trial court set a deadline for Petitioner to file an

amended motion to set aside his plea (*see* Ex. L, docket sheet entry 03/25/11).  On

May 31, 2011, Petitioner filed a pro se motion for post-conviction relief, pursuant to

Rule 3.850 of the Florida Rules of Criminal Procedure, asserting several challenges

to his plea on ground of ineffective assistance of trial counsel (Ex. L at 1–42).  The

trial court summarily denied the Rule 3.850 motion on July 31, 2015 (*id.* at 60–68).

Petitioner appealed the decision to the First DCA, Case No. 1D15-4739 (*id.* at

196–98).  The First DCA affirmed the decision per curiam without written opinion on

January 14, 2016 (Ex. M).  Fucci v. State, 182 So. 3d 640 (Fla. 1st DCA 2016).  The

mandate issued February 9, 2016 (Ex. N).  Petitioner filed a notice to invoke the

discretionary jurisdiction of the Supreme Court of Florida, Case No. SC16-423 (Ex. O). The state supreme court dismissed the case for lack of jurisdiction on March 9, 2016 (Ex. P). Fucci v. State, No. SC16-423, 2016 WL 903174, at *1 (Fla. Mar. 9, 2016).

On January 17, 2016, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D16-0208, raising three challenges to his sentence (Ex. Q at 1–35). The First DCA dismissed the petition as unauthorized on February 3, 2016 (Ex. R). Fucci v. State, 184 So. 3d 520 (Fla. 1st DCA 2016) (Table).

Petitioner filed the instant federal habeas action on July 29, 2016 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established"

only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for

> ordinary error correction through appeal."   <u>Harrington</u>, *supra*, at
> 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

<u>Woods</u>, 135 S. Ct. at 1376 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  <u>Brumfield v. Cain</u>, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review

of the merits of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the

---

[2] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the

prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review

of the issue.[3]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d [1277,] 1184 [(M.D. Ala. 2004)] (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501

---

[4] In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Id.  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Id.  Third, the state procedural rule must be adequate.  Id.  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  Id.

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct.

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106

S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception,

the petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115

S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the

petitioner must show that it is more likely than not that no reasonable juror would

have convicted him." Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of
> an innocent person is extremely rare.  To be credible, such a claim
> requires [a] petitioner to support his allegations of constitutional error
> with new reliable evidence—whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence

need not prove diligence to overcome a procedural bar, timing is a factor relevant in

evaluating the reliability of a petitioner's proof of innocence.  *See* McQuiggin v.

Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court

stated in Schlup, "[a] court may consider how the timing of the submission and the

likely credibility of [a petitioner's] affiants bear on the probable reliability of . . .

evidence [of actual innocence]."  513 U.S. at 332; *see also* House v. Bell, 547 U.S.

518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

## IV.    PETITIONER'S CLAIMS

A.    <u>Ground Two:</u>[6] "Petitioner received ineffective assistance of counsel and rendered Petitioner's plea involuntary in that counsel's failure to advise Petitioner of a viable defense to the charge of attempted premeditated murder where the record would clearly demonstrate there was no premeditation."

Petitioner alleges that prior to entering his no contest plea, trial counsel failed to advise him of a viable defense to the attempted first degree murder charge involving Charlene Wyrosdick , i.e., that there was insufficient evidence to prove premeditation (ECF No. 1 at 23–32).  Petitioner alleges defense counsel should have "objected" to the attempted first degree murder charge, on the ground that there was no evidence of premeditation (*id.* at 29).  Petitioner alleges the evidence and facts supported only a charge of second degree murder or manslaughter (*id.* at 24, 29–30). Petitioner alleges he would not have entered a plea to the attempted first degree murder charge if trial counsel had advised him that the charge could be defended on the basis that there was insufficient evidence of premeditation (*id.* at 26, 30–32).

Petitioner alleges that from the beginning of the case, he claimed that the argument between himself and Charlene Wyrosdick was not wholly his fault, and that he did not intend to kill anyone (ECF No. 1 at 26–27, 30–31).  Petitioner alleges the

---

[6] For organizational reasons, the court will discuss Petitioner's two claims in reverse order.

injuries he inflicted on Ms. Wyrosdick were not from a design of premeditation, but were instead the result of an argument which Ms. Wyrosdick initiated when she was intoxicated and violent, and which escalated and grew out of control (*id.*).  Petitioner alleges he told defense counsel that when Charlene drank, she became very violent and aggressive (*id.* at 27).  Petitioner alleges he told counsel that he hit Charlene with a baseball bat to defend himself, because Charlene was threatening him with a knife (*id.*).  Petitioner alleges he told counsel that his allegations of Charlene's violent and aggressive behavior could be corroborated by Charlene's three ex-husbands and her record of past criminal charges (*id.*).

Petitioner alleges the following facts and evidence did not give any indication of premeditation, and at most supported a charge for attempted second degree murder, because it showed that his hitting Charlene with the bat was accidental and a spontaneous act which was the product of Petitioner's overreaction, impulsivity, and intoxication:  (1) the statement of Andrew Chavous (Charlene's six-year-old son, who was the victim of the other attempted murder charge and an eyewitness to Petitioner's hitting Charlene with the baseball bat), that Petitioner and Charlene were arguing; (2) Petitioner's videotaped statement to law enforcement, that he and Charlene were arguing; (3) a report by Dr. Harry Krop, who evaluated Petitioner's sanity and

competency, that Petitioner's conduct was an overreaction; (4) the statement of Petitioner's mother, Whilmina Fucci, that Petitioner told her that he and Charlene had been drinking and got into an argument, that Charlene picked up a knife, and that Petitioner picked up a bat and swung it at her; and (5) Petitioner's statement to his sister immediately following the incident, in which he told her that he and his girlfriend got into an argument, and he thought she might be dead (ECF No. 1 at 28–31). Petitioner concedes he was "out of control," "went too far in his anger," and "should not have used the bat, but it was the first thing he grabbed" (*id.* at 30–31).

Petitioner asserts he did not present this claim of ineffective assistance of trial counsel ("IATC") in his state post-conviction motion (ECF No. 1 at 31). Petitioner asserts his failure to present the IATC claim to the state courts was caused by the fact that he did not have counsel in the Rule 3.850 proceeding (ECF No. 1 at 32–33; ECF No. 17 at 2–14). He argues that the absence of representation in the Rule 3.850 proceeding satisfies the "cause" exception to the procedural default, pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) (ECF No. 1 at 32–33; ECF No. 17 at 2–14). Petitioner contends he is entitled to de novo review of his IATC claim by this federal court (*id.*).

Respondent contends Petitioner's claim is unexhausted and procedurally defaulted (ECF No. 15 at 22–24). Respondent contends <u>Martinez</u> does not apply, because Petitioner failed to request appointment of counsel during the four years that his Rule 3.850 motion was pending in the circuit court (*id.*). Respondent additionally contends <u>Martinez</u> does not apply, because Petitioner's IATC claim is not substantial (*id.*).

As previously discussed, a federal court may consider the merits of a procedurally defaulted claim if the petitioner can show both "cause" for the default and "prejudice" from a violation of his constitutional right. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84–85, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting <u>Murray</u>, 477 U.S. at 488) (quoting <u>Strickland</u>, 466 U.S. at 688).

In <u>Martinez</u>, the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . ." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2)

"appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland [v. Washington, 466 U.S. 668 (1984)]."  566 U.S. at 14.  In such instances, the habeas petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Id.*

In Hittson v. GDCP Warden, the Eleventh Circuit explained Martinez's "substantial claim" requirement:

> Martinez articulated the "substantial claim" requirement as follows:
>
> > To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.  *Cf.* Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).
>
> Martinez, — U.S. at —, 132 S. Ct. at 1318–19.  Neither Martinez nor Trevino [v. Thaler, — U.S. —, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013)] elaborated on or applied this standard, but we take the Court's reference to Miller–El to mean that it intended that lower courts apply the already-developed standard for issuing a COA, which requires "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

As the Court explained in <u>Miller–El</u>, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). That does not mean that a petitioner must show "that some jurists would grant the petition." <u>Miller–El</u>, 537 U.S. at 338, 123 S. Ct. at 1040. "[A] claim can be debatable even though every jurist of reason might agree, after the . . . case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings. Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error." Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from <u>Strickland</u>.

759 F.3d 1210, 1269–70 (11th Cir. 2014) (footnotes omitted).

The standard for evaluating claims of ineffective assistance of counsel is set

forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under

<u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide

latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

A defendant's counsel has a general duty "to reasonably investigate avenues of defense (or make a reasonable decision to not do so)." <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1273 (11th Cir. 2008). Inherent in this duty to "conduct a substantial investigation into any . . . plausible lines of defense," <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1226 (11th Cir. 2002), is the notion that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," <u>Strickland</u>, 466 U.S. at 690–91. The duty to investigate particular facts or defenses is thus not absolute, but counsel's decision not to investigate must be reasonable under the circumstances. <u>Everett v. Sec'y, Fla. Dep't of Corr.</u>, 779 F.3d 1212, 1249–50 (11th Cir. 2015), *cert. denied*, — U.S. —, 136 S. Ct. 795, 193 L. Ed. 2d 722 (2016). The information that a defendant's attorney obtains from the defendant with regard to any possible defenses is relevant to this inquiry. *See* <u>Pooler v. Sec'y, Fla. Dep't of Corr.</u>, 702 F.3d 1252, 1269–70 (11th Cir. 2012) (citing <u>Strickland</u>, 466 U.S. at 691). Counsel's performance is deemed to be deficient only if the petitioner can show that "no competent attorney"

would have failed to pursue the defense, given the facts known to counsel at the time.

*See* Premo v. Moore, 562 U.S. 115, 124, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

The Supreme Court warned about second-guessing professional judgments made by counsel in a plea situation:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than

to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694 ). In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 59.

Upon review of Petitioner's submissions in this federal proceeding, as well as the state court record, the undersigned concludes that jurists of reason would not find

it debatable whether Petitioner stated a valid IATC claim with respect to counsel's

failure to advise Petitioner that the lack of evidence of premeditation was a viable

defense to the attempted first degree murder charge.

To prove the crime of Attempted First Degree Premeditated Murder, the State

was required to prove the following three elements beyond a reasonable doubt:

> 1.  Petitioner did some act intended to cause the death of the victim that went beyond just thinking or talking about it.

> 2.  Petitioner acted with a premeditated design to kill the victim.

> 3.  The act would have resulted in the death of the victim except that someone prevented Petitioner from killing the victim or Petitioner failed to do so.

Fla. Standard Jury Instructions in Criminal Cases, Part Two:  Instructions on Crimes,

Attempted Homicide 6.2.  A premeditated design to kill means that there was a

conscious decision to kill.  *Id.*  The decision must be present in the mind at the time

the act was committed.  *Id.*  The law does not fix the exact period of time that must

pass between the formation of the premeditated intent to kill and the act.  *Id.*  The

period of time must be long enough to allow reflection by the defendant.  *Id.*  The

premeditated intent to kill must be formed before the act was committed.  *Id.*  The

question of premeditation is a question of fact to be determined by the jury.  *Id.*  It

would be sufficient proof of premeditation if the circumstances of the attempted

killing and the conduct of the accused convinced the jury beyond a reasonable doubt of the existence of premeditation at the time of the attempted killing.  *Id.*

Petitioner was represented by Attorneys James Connor and Catherine Gleason during the trial court proceedings.  Their investigative efforts and assessment of the weight of the State's case is set forth in Attorney Connor's response to Petitioner's complaints to The Florida Bar.  He described thier investigation of the case as follows:

> I, along with co-counsel [Attorney Catherine Gleason], took the depositions of all witnesses known to the defense.  We spent many hours reviewing police reports and the voluminous medical records generated as the result of the life-threatening injuries to the victim.  I should note that there were two victims, the defendant's girlfriend and her young son.  The girlfriend received the more serious injuries as a result of being beaten by the defendant with a baseball bat.  Responding deputies testified that when they arrived at the home shared by the defendant and the victims they believed that both victims, who were laying [sic] in a pool of blood, were dead.  I mention this not as a statement regarding the defendant or my obligation to use my best efforts in his defense, but as facts that the jury would taking [sic] into consideration if the defendant elected to go trial.  My previous statement regarding taking the depositions of all witnesses is incorrect.  Doctors told us that the girlfriend was not physically able to participate in a deposition.  As late as 2 months before the plea, the victim was having her 6th or 7th major operation to repair her skull.  A part of her skull broke away and had to be re-attached to cover her exposed brain.  The victim, who led an active life before the attack, now needs constant care and will never return to "normal."  The victim's elderly mother watches the victim except when she (mother) is at work.  While the mother is at work, the victim's brother stays with the bedridden victim.  Doctors, who were amazed that the victim lived through the ordeal, advised the victim's need for constant care will not change.  The young boy suffered a fractured wrist

and a skull fracrute [sic].  Doctors testified that the injuries to the child appeared to be defensive wounds inflicted when the boy was laying [sic] on top of his mother to protect her as she lay on the kitchen floor.  Again, these facts would be presented to the jury.  The hospital photos of the victim are horrendous.

Mr. Fucci told me that his girlfriend tried to run him over with her car several years prior to this crime.  It is my recollection that the defendant advised that the incident did not result in any charges against the girlfriend.  I assume that when the defendant mentions a failure to obtain police reports about "other incidents" he is referring to the car event.  I had numerous discussions with Mr. Fucci regarding any attempt to discredit the victim in this case and the effect such an attempt would have on a jury.  I believed then (and now) that trying to justify or minimise [sic] the trauma inlicted [sic] on the victims because of some incident two years ago would have a serious negative impact on a jury.  As in the recorded statements and psychological evaluations (there were two), Mr. Fucci persisted in presenting himself as a victim.  I was completely unsuccessful in urging to Mr. Fucci that he would be better served if (had this gone to trial) he expressed some concern for the victims.  I say this not as a statement about Mr. Fucci but only as one of the many difficulties faced by his defense attorneys.

l did not work a "deal" with the court.  The State advised that it would drop the attempted murder charge regarding the young boy and cap their recommendation at 50 years if the defendant pled.  We (Ms. Gleason and I) conveyed the offer to the defendant.  The bottom of the guidelines was 11 years and Mr. Fucci could argue for that sentence.  At no time did I treat the defendant "unfairly" or as a guilty person.  I did advise that the physical evidence and defendant's recorded admissions along with the severity of the injuries to the victims created a very difficult fact situation if the defendant were to elect to go to trial.  Mention should be made regarding Mr. Fucci's recorded statements.  Shortly after the incident, the defendant called a relative to tell her what had happened.  The relative was not at home and the defendant left a recorded massage that was eventually turned over to the police.  At no time in the recorded

message did the defendant express any concern for the victims who (in the words of the prosecutor he "left for dead") but instead talked about how the incident affected him.  In later recorded statements to law enforcement, the defendant repeatedly mentioned how the attack will impact his life.  The defendant never inquired as to the condition of the victims.  This lack of interest in the victim's welfare was also noted by the psychologist who was asked (by the defense) to evaluate the defendant.

(Ex. L at 47–48).

Attorney Gleason's response to Petitioner's Bar complaint included a list of the names of fifty-three (53) persons whom counsel deposed (Ex. L at 50).  Attorney Gleason also referenced motions filed by defense counsel on Petitioner's behalf, including motions to appoint experts to assist the defense on issues of competency, sanity, mitigation, and the role that alcohol played in the offenses, as well as a motion to appoint an investigator to conduct a background investigation on Charlene Wyrosdick (Ex. L at 50–51).  Those motions, and the trial court's orders granting all of them, are included in the state court record (Ex. A at 18–20, 37–40).

Additionally, Petitioner submitted the report of one of those experts, Harry Krop, Ph.D., who was appointed to evaluate Petitioner's competency to proceed and his sanity at the time of the offenses (*see* ECF No. 1-1, Ex. B).  With respect to Petitioner's mental state at the time of the offenses, Dr. Krop opined that Petitioner was sane, but it was likely that Petitioner's actions were triggered by his past history

with the victim and other experiences involving individuals who threatened Petitioner

with a knife (*id.*).  Dr. Krop expressed his hope that Petitioner's mental state at the

time of the offenses "will be considered as mitigation as he represents that he was

reacting to the victim's violent behavior and threats to do harm to Mr. Fucci.  He also

insists that he had no intention of hitting the juvenile victim." (*id.*).

The record also includes a transcript of the plea hearing, at which the State

announced that if the case proceeded to trial, the State would present evidence of the

following:

> [A]s to Count I, . . . on about June 18th of 2008, going into the
> morning hours of June 19th of 2008, Daniel Steven Fucci, while in
> Alachua County, Florida, committed the offense of attempted
> first-degree murder upon Deborah Charlene Wyrosdick, a human being,
> in that he unlawfully attempted to kill Ms. Wyrosdick by actually and
> intentionally striking her against her will with a metal baseball bat and/or
> metal object.  Did so in the presence of a child under 18 years of age, to
> wit, Andrew Chavis [sic], his date of birth being [in] 2002.  And in the
> course of striking, the Defendant caused great bodily harm, permanent
> disability, or permanent disfigurement to Ms. Wyrosdick.  And in the
> course of striking Ms. Wyrosdick, he used a deadly weapon, that being
> a metal baseball bat.  Essentially, Your Honor, he fractured her skull and
> caused a massive epidural hematoma that required emergency surgery.
>
> As to Count III, the felony fleeing and attempting to elude, had we
> proceeded to trial, the State would have been ready to show at the same
> date and time that Daniel Steven Fucci, while in Alachua County,
> Florida, between June 18th, 2008, and June 19th, 2008 was the operator
> of a motor vehicle.  He had knowledge that he had been ordered to stop
> such vehicle by a duly-authorized law enforcement officer, that being

Deputy Sheriff Christopher Sims. Mr. Fucci willfully refused to stop his vehicle. And in fact—in compliance with such order—and in fact, did willfully flee in an attempt to elude not just Officer Sims, but multiple officers. Deputy Sims was an authorized—was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed thereon with lights and sirens and did drive at high speed[s] or in a manner which demonstrated a wanton disregard for the safety of persons and property in the area.

The backdrop—factual backdrop to that, Your Honor, is that he [Petitioner] returned to the crime scene. Law enforcement saw his vehicle. Lights were off on the van. They yelled at him to stop. He backed out onto 241 and headed south into Levy County with a host of deputies sheriffs in tow. They were going in excess of a hundred miles an hour. Mr. Fucci was driving with his lights off. And until he crossed 241 where it crosses—dead-ends into Alternate 27, he crashed through a fence and still attempted to elude law enforcement until he struck a culvert, and that stopped the chase.

As to Count IV, the aggravated child abuse, the State would have been ready to show that on or about June 18th, going into the morning hours of June 19th of 2008, that Daniel Steven Fucci, while in Alachua County, Florida, committed the offense of aggravated child abuse upon a child, in that he unlawfully committed an aggravated battery upon a child under 18 years of age or did knowingly or willfully abuse a child under 18 years of age, and in doing so caused great bodily harm, permanent disability, or permanent disfigurement to the child. And the facts, more specifically, is that Daniel Steven Fucci struck Andrew Chavis, whose date of birth was [in] 2008, with a metal bat. The specific—if I said 2008, correction on the birthdate [sic] would be [in] 2002—resulting in Andrew Chavis fracturing his skull and also fracturing his hand.

(Ex. L at 104–06).

The State presented some of its evidence at the sentencing hearing, including portions of a videotape of Petitioner in a squad car after he led law enforcement officers on a high speed chase and crashed (Ex. L at 118, 127–30).  During the video, Petitioner stated he was "an asshole" for what he did, and "My life's over" (*id.* at 127).  Petitioner stated, "I hate you, Charlene" (*id.*).  He stated, "Oh, my God, I fucked up bad," and then repeated, "Charlene, I hate you." (*id.* at 127–28).  Petitioner stated, "I'm a horrible person." (*id.* at 128).  He also stated, "Charlene, I'm going to kill you" (*id.* at 128).  Petitioner then stated, "They can put me in the electric chair," and "I'm going to get a death sentence for this one" (*id.* at 130).

The State also presented an audio-taped message that Petitioner left on his sister's (Linda Fucci) answering machine after he hit Charlene and Andrew with the bat and before he led officers on the high speed chase:

> Hey, Linda.  It's Danny.  I was hoping you would answer your phone. I realize I fucked up.  My life is probably over.  Honestly.  I think my life's over.  But I wanted to call you and tell you that I love you.  I'm thinking about you (inaudible)—South Carolina I'm pretty sure.  But, anyways, if you get my call, I fucked up bad.  I fucked up really bad. My life's over.  I love you.  Please think of me.  I'm going to miss you bad.  Bye.

(Ex. L at 118, 130–31).

A competent defense attorney could conclude that there was sufficient evidence from which a jury could infer beyond a reasonable doubt that Petitioner had made a conscious decision to kill Charlene at the time he swung the bat at her.  Therefore, counsel was not deficient for failing to advise Petitioner that lack of premeditation was a viable defense to the attempted first degree murder charge involving Charlene. Further, it was reasonable for defense counsel to advise Petitioner to accept the plea offer in order to limit his maximum sentence exposure to 50 years, instead of risking a maximum exposure of 65 years if Petitioner went to trial and was convicted as charged (the 65 years assumes that double jeopardy principles may have precluded Petitioner's convictions of both attempted first degree murder and aggravated child abuse as to six-year-old Andrew; if double jeopardy principles did not apply, Petitioner faced a maximum sentence of 95 years).

Jurists of reason would not find it debatable whether Petitioner stated a valid IATC claim with respect to defense counsel's failure to advise Petitioner that a lack of evidence of premeditation was a viable defense to the attempted first degree murder charge involving Charlene.  Therefore, Petitioner is not entitled to federal de novo review of his IATC claim through the <u>Martinez</u> exception.  Ground Two should be denied as procedurally barred.

B.    Ground One: "Conviction was obtained in violation of Petitioner's and [sic] 6th and 14th amendment [sic] rights to the United States Constitution to receive due process of law and effective assistance of counsel in violation of Strickland v. Washington, 466 U.S. 688 (1984) in that:  counsel failed to perform their lawful duty by assisting Petitioner in preparing a facially sufficient 'Motion to Withdraw Plea and Notice of Appeal' contrary to Petitioner's right of due process and effective assistance of counsel as protected by the 6th and 14 amendment [sic] of the United States Constitution."

Petitioner alleges his trial counsel, Mr. Connor and Ms. Gleason, were ineffective for failing to assist him in filing a sufficient motion to withdraw his plea and for filing a premature and facially insufficient notice of appeal (ECF No. 1 at 6–21).  Petitioner contends if counsel had assisted him, he would have sought to withdraw his plea on the following grounds:

> Fucci's motion to withdraw plea would have been based on the fact that his plea was involuntary.  In that his attorney's [sic] advised him that if he told the judge that he did not want to put the young victim [Andrew Chavous] through a trial, the judge would sentence him to no more than 15 years.  Fucci's counsel further advised him that the prior record of the victim's [Debra Charlene Wyrosdick] criminal record would convince the trial court that the minimum sentence would be imposed and he should just go along with the plea colloquy.

ECF No. 1 at 20).  Petitioner alleges if counsel had filed a facially sufficient motion to withdraw plea, the trial court would have appointed different counsel to represent him in seeking to withdraw the plea, and "this matter would have been determined by the trial court" (id. at 20–21).  With regard to counsel's filing a premature notice of

appeal, Petitioner contends he was prejudiced because the First DCA dismissed the appeal (*id.*).  Petitioner concedes he did not present either part of this IATC claim in his Rule 3.850 motion (ECF No. 1 at 7, 22; ECF No. 17 at 2–14).  As with Ground Two, Petitioner asserts his failure to present the IATC claim to the state courts was caused by the fact that he did not have counsel in the Rule 3.850 proceeding (ECF No. 1 at 7, 22–23; ECF No. 17 at 2–14).  Petitioner again relies upon <u>Martinez</u> to satisfy the "cause" exception to the procedural default and obtain de novo review of his IATC claim by this federal court  (ECF No. 1 at 7; ECF No. 17 at 2–14).

Respondent agrees that Petitioner's claim is unexhausted and procedurally defaulted (ECF No. 15 at 9–12).  Respondent contends <u>Martinez</u> does not apply, because Petitioner failed to request appointment of counsel in the Rule 3.850 proceeding, and Petitioner's IATC claim is not substantial (*id.* at 12–22).

Petitioner's assertion that his decision to enter a plea was based upon counsel's assurance that Petitioner would receive "the minimum sentence" and/or a maximum of 15 years is refuted by the written plea agreement and Petitioner's sworn statements during the plea colloquy.  In the written plea agreement itself, titled "Petition to Enter Plea of . . . Nolo contendere," Petitioner placed his initials next to the following two paragraphs:

 DF  21.  Unless otherwise agreed to in the PLEA AGREEMENT below, I recognize that if I have been told by my lawyer that I might receive probation or a light sentence, this is merely his/her opinion or estimate and is not binding on the judge.  I further understand that if I am sentenced to incarceration in the county jail or state prison, that I cannot rely upon anyone's, including my attorney's, estimation of how much time I will actually serve as a result of my plea.  I understand that credit for gain time, past or future, will be determined by the Department of Corrections, and that the judge in this case has no control over that determination.  Other than the terms of the PLEA AGREEMENT below, if any, no promise or suggestion of any kind has been made to me, directly or indirectly, by my attorney or by any officer or agent of any branch of government federal, state or local, to get me to enter this plea, nor has anyone subjected me to any force, threat, duress, intimidation or pressure to influence me in any way to enter this plea.

## PLEA AGREEMENT

 DF  The Defendant and the State, pursuant to the provisions of Fla. R. Crim. P. 3.171, agree as follows (NO ABBREVIATIONS):

> [handwritten] State & Defense agree to recommend a sentence w/in the following range:
>
> Min – 11 yrs D.O.C.
> Max – 50 yrs D.O.C.
>
> No victim contact
> Restitution to be determined

(Ex. L at 76–77).  Petitioner signed his name under the following statement:

**UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT I HAVE READ AND UNDERSTAND THIS ENTIRE DOCUMENT. THE INFORMATION IN EACH PARAGRAPH INITIALED BY ME IS TRUE.  THE INFORMATION IN THE PARAGRAPHS**

**NOT INITIALED BY ME DOES NOT APPLY TO ME OR MY CASE.**

(Ex. L at 77).

During the plea colloquy, Petitioner stated under oath that his trial counsel had gone over the plea petition with him, and that he understood it (Ex. L at 94–103). Specifically with respect to the sentence, Petitioner's trial counsel questioned Petitioner as to his understanding of the sentence:

> MR. CONNOR [Petitioner's trial counsel]:   As to the plea agreement that is recommended to The Court and it's up to The Court whether or not The Court will accept this agreement.  But the agreement is that the State and Defense agree to recommend a sentence within the following range:  A minimum sentence of 11 years DOC, a maximum sentence of 50 years DOC.  You understand that?
>
> THE DEFENDANT:  Yes, sir.

(Ex. L at 100).

Petitioner now contends counsel was ineffective for failing to assist him in filing a motion to withdraw his plea, on the ground that counsel promised him "the minimum sentence" and/or a maximum sentence of 15 years, but counsel is not ineffective for failing to raise a non-meritorious claim.  *See* Brownlee v. Haley, 306 F.3d 1043, 1046 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917–18 (11th Cir.

2001) (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim); <u>Meeks v. Moore</u>, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit).

In light of Petitioner's sworn statements in both the written plea agreement and during the plea colloquy, Petitioner failed to show that there jurists of reason could debate whether defense counsel was deficient for failing to file a motion to withdraw Petitioner's plea. Additionally, Petitioner failed to show that there could be any reasonable debate as to whether there is a reasonable probability the trial court would have granted a motion to withdraw plea if counsel had filed one or assisted Petitioner in doing so. Petitioner thus failed to satisfy <u>Martinez</u> with respect to this part of his IATC claim.

The other part of Petitioner's IATC claim is that defense counsel filed a premature and facially insufficient notice of appeal. When trial counsel's constitutionally deficient performance deprives the defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective

assistance of counsel claim entitling him to an appeal.  *See* <u>Roe v. Flores-Ortega</u>, 528

U.S. 470, 484, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).  Here, Petitioner was not

deprived of an appeal.  Petitioner's pro se notice of appeal was docketed in the First

DCA.  The First DCA issued an order instructing Petitioner to pay the filing fee or

obtain an order of insolvency from the trial court.  The First DCA also instructed

Petitioner to file an amended notice of appeal which included a certificate of service

and identified the date of the order he sought to appeal.  Petitioner conceded that he

received the First DCA's orders (*see* Ex. C).  Petitioner complied with one of the

orders by obtaining an order of insolvency from the trial court (Ex. A at 177).  The

trial court forwarded the order of insolvency, and the record on appeal, to the First

DCA (*see* Ex. A).  The First DCA dismissed the appeal because Petitioner did not

comply with the order directing him to file an amended notice of appeal (Ex. B).

Petitioner was thus provided an appeal, he simply failed to pursue it by failing to

respond to the clear, simple order instructing him to amend his notice of appeal to

include the date of the order being appealed and a certificate of service.

Additionally, despite Petitioner's failure to comply with the First DCA's order,

Petitioner was given a second bite at the apple when, following the trial court's denial

of Petitioner's motion to withdraw his plea, the First DCA directed the trial court to

provide Petitioner an opportunity to amend his motion to withdraw plea.  The trial

court did so, and Petitioner received a full merits review of the challenges to his plea

by both the trial court and the First DCA.

Petitioner failed to show a substantial IATC claim with respect to counsel's

allegedly filing a premature and facially insufficient notice of appeal.  Therefore, he

is not entitled to federal de novo review of his IATC claim through the <u>Martinez</u>

exception.

In sum as to Ground One, both parts of the IATC claim presented therein were

unexhausted and procedurally defaulted.  Petitioner failed to show he is entitled to

federal review of the claim through any exception to the procedural bar.  Therefore,

Petitioner is not entitled to federal habeas relief on Ground One.

V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant."  If a certificate is

issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 19th day of October 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**